UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

ANTHONY ZAPPIN,

        Plaintiff,

                                   Civil Action No. 3:15-CV-13706

        vs.

GRAY TELEVISION GROUP, INC.,

        Defendant.

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Gray Television Group, Inc. dba WSAZ, by counsel, submits this Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully states as follows:

### PRELIMINARY STATEMENT

Mr. Zappin, a member of the West Virginia and New York bars, has brought an action for "...defamation, false light publicity, and intentional infliction of emotion [sic] distress." This Complaint alleges that "[o]n or about October 3, 2014, WSAZ engaged in tortious conduct against Plaintiff, as set forth in detail below." (Compl. ¶ 1 (emphasis added).)

This Complaint filed more than 365 days after the events complained of, fails for a multitude of reasons, not the least of which is his failure to meet the governing one-year statute of limitations that bars at least two of the causes of action alleged.

On October 3, 2014, Brad Myers, a reporter producer for WSAZ television located in Huntington, West Virginia, attended a sentencing hearing before Judge Alfred Ferguson. The

4844-5187-0508.v1

sentencing by Judge Ferguson was for Mr. Zappin's mother, a convicted felon who had most recently embezzled money from a food bank. Along with Herald Dispatch reporter Curtis Johnson, they undertook to report this event to their viewership and readership. After Mrs. Zappin was sentenced to a term in prison, Anthony Zappin, accompanied by his mother, father, and lawyer, left the court room, followed by Mr. Johnson and some distance behind, Mr. Myers. A confrontation occurred between Anthony Zappin and Mr. Johnson, which was subsequently recorded by Mr. Myers. It is this video recording, which was shown on October 3, 2014 on WSAZ television at the noon, five, six o'clock news and placed on the station's website which is the subject matter of this litigation. Based upon the video, which is included as a portion of the Complaint, Mr. Zappin claims that WSAZ has defamed him, engaged in false light publicity, and intentionally inflicted emotion [sic] distress. Based on the pleadings alone, each of these claims can be disposed on account of multiple independently-sufficient reasons.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a defendant can move for and is entitled to dismissal if the plaintiff's complaint fails to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   A complaint fails to state a compensable claim, if, when viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the Complaint does not contain, "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under the "plausibility" standard, the following analysis applies:

> A claim is factually plausible when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but as for a more than a sheer possibility that a Defendant has acted unlawfully. Where a Complaint pleads facts that are

4844-5187-0508.v1

"merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 quoting *Twombly*, 550 U.S. at 556-557 (internal citations omitted.) Determining whether a Complaint states a facially plausible claim for relief is a "context-specific task" that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While the court is required to accept as true the factual allegations asserted in the Complaint, it is not required to accept the legitimacy of a "legal conclusion that is couched as factual allegation." *Id. et seq.* at 678 (quoting *Bell Atlantic Corp.*, 550 U.S. at 555).

In light of the fact that Mr. Zappin is an attorney and member of the West Virginia and New York bars, this complaint should not be subject to the rule of liberality under which *pro se* complaints generally are treated.

The Complaint in this instance, which alleges defamation, false light publicity, and intentional infliction of emotion [sic] distress, lacks factual or legal merit, and therefore, should be dismissed.

### Count I – Defamation

### A.  The Defamation Claim Is Time Barred.

In West Virginia, actions for defamation are subject to a one-year statute of limitations. *See* W. Va. Code § 55-2-12(c) (2014). As pled in the Complaint, it is clear that the alleged tortious conduct occurred on October 3, 2014. (Compl. ¶ 1.) The Complaint in this matter was filed on October 5, 2015, which is more than 365 days after the alleged tortious conduct occurred. Therefore, Plaintiff's defamation claim is barred by the one-year statute of limitation, and the Court should dismiss Count One for failure to timely file.

4844-5187-0508.v1

### B.  Plaintiff Fails to State a *Prima Facie* Case for Defamation.

Even considering the merits of the claim, Count I should be dismissed with prejudice, because the essential elements of a defamation claim by a private individual[1] are lacking. To state a *prima facie* claim for defamation under West Virginia law, Plaintiff must allege each of the following elements: 1) defamatory statements, 2) a non-privileged communication a third party, 3) falsity, 4) reference to the Plaintiff, 5) at least negligence on part of the publisher, and 6) resulting injury. Syl. Pt. 1, *Crump v. Beckley Newspapers*, 320 S.E.2d 70, 74 (W. Va. 1983).

In considering a defamation claim, "[a] court must decide initially, as matter of law, if the challenged statements in a defamation action are capable of a defamatory meaning*." Long v. Egnor*, 346 S.E.2d 778 (W. Va. 1986).  Further, if there is no dispute as to the words written or spoken, the fact of publication and other surrounding circumstances, the question of privilege or the lack thereof is one of law for the court. Whether defendant abused or exceeded the privilege of the occasion is likewise a question of law to be determined by the court. *Swearingen v. Parkersburg Sentinel Co*, 26 S.E.2d 209, 215 (W. Va. 1943) (citations omitted).

The fundamental problem with Mr. Zappin's defamation claim is that, even accepting all allegations as true, Count I fails to set forth any defamatory statement which he claims WSAZ has made about him. The closest that Mr. Zappin comes is set forth in paragraphs 19 and 20 of his Complaint. However, the argument in paragraph 19 as to who confronted who at the courthouse is directly contradicted by the actual raw footage shown at paragraph 12 of his Complaint. In paragraph 20, Mr. Zappin appears to accuse Tim Irr's reporting of "… may be

---

[1] A valid but fact-driven argument can be made that Mr. Zappin is a public figure because various examples of his misconduct have been chronicled by publications such as *The New York Post, Above the Law,* and *The Journal of the American Bar Association*. Should this matter continue beyond the Motion to Dismiss stage, it will be the position of WSAZ that Mr. Zappin is a public figure and the actual malice standard applies.

charged in the incident" as potentially defamatory. It is not. The language set forth and alleged to be from Mr. Irr in no way constitutes a defamatory statement and is demonstrably not a false statement.

## C. Lack of Falsity

Perhaps the greatest hurdle that Mr. Zappin faces in his claim for defamation against Defendant is the simple reality that the alleged statements were not false. *Bryan v. Mass Mut. Life Ins. Co.*, 364 S.E.2d 786, 793 (W. Va. 1987) (". . . before a statement can be considered defamatory, it must be false.") A statement is not false unless it "would . . . have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Suriano v. Gaughan*, 480 S.E.2d 548, 561 (W. Va. 1996). In *Suriano*, the West Virginia Supreme Court of Appeals clearly articulated that the falsity standard in defamation cases "overlooks minor inaccuracies and concentrates upon substantial truth" as follows:

> The law of liable takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth. Minor inaccuracies do not amount to falsities so long as the substance, the gist, the sting, of a libelous charge could be justified. A statement is not considered false unless it would have a different effect on the mind of the reader from that with the pleaded truth would have produced." Syl. Pt. 4 *Suriano*, 198, W. Va. at 342, 480 S.E.2d at 551.

*Id.* (finding the alleged accusation "substantially true and was, therefore, protected speech").

There is no question from reviewing the Complaint, including the confrontation as shown in the video at the security checkpoint, that Mr. Zappin *may* have been charged in the incident. The Court can take judicial notice of the public records indicating that, on or about October 4, 2014, the Cabell County Sheriff's Department took an incident report concerning the courthouse confrontation between Mr. Zappin and The Herald-Dispatch report, Curtis Johnson.  Lt. Robert

Bruce of the Sheriff's Judicial Division said that department investigators would be taking over the case to see if any charges would be filed. The fact the reporter subsequently chose not to seek a criminal Complaint against Mr. Zappin is simply irrelevant in the context of the speech alleged by WSAZ.

### D. Lack of Resulting Injury

Mr. Zappin's claim for defamation is also barred by the absence of damages resulting from Defendant. It was Mr. Zappin's own conduct in the Cabell County Courthouse—not the report by WSAZ or video shot by WSAZ—that could have resulted in damage, if any, to Mr. Zappin or his reputation. He has not pled any damage with specificity, nor can he show that he was damaged in any way by this true and accurate report. Under the circumstances, the absence of any damages resulting from the alleged defamatory statement or video itself, an essential element of defamation, is fatal to his claim.

### E. The Fair Report Privilege Applies To The Events At The Cabell County Courthouse

The West Virginia Supreme Court of Appeals adopted the fair report privilege in *Hinerman v. Daily Gazette Co., Inc.* 423 S.E.2d 560, 578 (W. Va. 1992), which provides:

> The publication of defamatory material concerning another
> in a report of an official action or proceeding or of a meeting
> open to the public that deals with a matter of public concern
> is privileged if the report is accurate and complete or a fair
> abridgement of the occurrence reported.

*Id.* (quoting Rest. (Second) of Torts § 611 (1977).)

Here, the fair report privilege applies to a hearing at the Cabell County Courthouse where Mrs. Zappin was sentenced to jail and a member of her family engaged in offensive behavior immediately thereafter in the public halls of the courthouse. Because the raw video is without commentary and what happened is best determined by the viewer, it clearly constitutes fair

6

report.  As discussed above, Tim Irr's reporting that ". . . he may be charged" is also a fair report of the occurrence and its conclusion at the security checkpoint, and is thus privileged.

**F. Mr. Zappin's Complaint Fails to Satisfy the Pleading Standards for a Defamation Claim**

In addition to failing to plead a *prima facie* case for defamation, Mr. Zappin's Complaint falls short of the relevant pleading standard for making such allegations. Long-standing West Virginia law requires allegations of defamation to be pled with particularity or face dismissal. Plaintiff must specifically plead what statements were made, when, by whom, and to whom. *See, e.g.*, *Porter v. Mack*, 40 S.E. 459, 461 (W. Va. 1901). The vague and generalized statements against WSAZ fall far short of the particularity and specificity requirements of *Porter* and its progeny, and thus, for this reason as well, Mr. Zappin's defamation claim should be dismissed. Because no amount of re-pleading can cure the inherent deficiencies of the claim, Count I should be dismissed with prejudice.

**Count II - False Light Publicity**

**A. The claim of false light fails due to being untimely filed.**

False light publicity claims, or invasion of privacy actions, are personal. As a personal action, invasion of privacy and false light are governed by a one-year statute of limitations. *See* W. Va. Code § 55-2-12(c). As set forth above, the Complaint was filed on October 5, 2015, and the Complaint itself clearly alleges that the tortious conduct occurred on October 3, 2014. (Compl. ¶ 1.)  Therefore, the claim of false light publicity is barred under West Virginia law.

**B. The claim of false light publicity fails to plead the substantive necessary elements.**

West Virginia recognized the tort of false light publicity in Syl. Pts. 8-15, *Crump*, 320 S.E.2d at 74, 86-87.  The *Crump* decision sets forth five elements which must be pled to properly allege a claim for false light.

7

The first of those elements is public disclosure. In order for a Plaintiff to recover for the tort of false light invasion privacy, the facts creating the false light must be made public. *Crump* S.E.2d at 87.

The second requirement is that of falsity. As discussed above with respect to defamation, falsity is an essential element, and thus, in order to sustain a claim of false light invasion of privacy, the matter that is being publicized must be untrue. *Crump*, 320 S.E.2d at 87. Further, the words or elements are to be viewed in the context of the whole article, rather than in isolation.

The third element is identification of the Plaintiff. False light claims may be based upon "the use of another's photograph to illustrate an article or book with which the person has no reasonable connection and which places the person in a false light." *Id.* at 86. The question thus becomes whether the publication sufficiently refers to the plaintiff, such that his or her privacy was invaded. The conduct of the plaintiff must be analyzed to determine whether or not that person has been portrayed in a false light.

The fourth requirement is that of offensiveness. In order for a communication to support a claim of false light and invasion of privacy, that communication must be highly offensive to a person of reasonable or ordinary sensibilities. *Id* at 84. As the *Crump* Court indicated, the protection of the law of privacy does not extend to the super sensitive.

The fifth and final requirement under the *Crump* doctrine is fault. Under the *Crump* doctrine, unless a communication is subject to a privilege, a claim of false light invasion of privacy by a private individual against a media defendant, such as WSAZ, will be subjected to the test of "what a reasonably prudent person would have done under the same or similar circumstances." *Id.* at 89. When a media defendant is involved, the "reasonably prudent person" standard becomes a "liberal professional newsperson" standard. *Id.* at 90. In making these

determinations, the court must make a determination whether or not the report, such as that of WSAZ, is the issue of public concern.

Mr. Zappin's alleged claims fail because he has not shown falsity on the part of any individual at WSAZ when the words or elements are viewed in the context of the whole newscast rather than in isolation. Further, the identification of the Plaintiff was appropriate under the circumstances, in that Mr. Zappin became a prime actor of his own making in his assault upon the Herald Dispatch reporter in the hallways of the Cabell County Courthouse. What to conclude from the report is best left to the viewing audience, and in no way suggests that WSAZ, its reporter, or its anchor attempted to alter or misconstrue the events that occurred in the Cabell County Courthouse. Further, while the conduct of Mr. Zappin may have been offensive, the communication by the reporter, anchor, and WSAZ, is not in and of itself offensive to a person of reasonable or ordinary sensibilities, as required by *Crump*. It turns this concept on its head, to suggest that the misbehavior of Mr. Zappin, which in itself may be viewed as offensive, is somehow attributed to conduct of the station simply by reporting the events which occurred that particular day on October 3, 2014. Finally, there is no fault on the part of the reporter, anchor, or WSAZ, in that this is clearly an issue of public concern. In applying the liberal, professional newsperson standard of *Crump*, the conduct and activities of the reporter, anchor, and WSAZ are appropriate under any reasonable person standard. Based on the foregoing, Mr. Zappin's claim of false light publicity fails as a matter of law.

## Count III – Intentional Infliction of Emotional Distress

### A. There Was No "Outrageous Conduct" by WSAZ.

In this three-paragraph count, Mr. Zappin alleges that WSAZ has engaged, instigated, or directed in a course of extreme or outrageous conduct with the intention of causing, or reckless

disregard for causing, emotional distress to Plaintiff, namely the publishing of false and defamatory statements in a spliced video over broadcast television and the internet. (Compl. ¶ 39.)[2]

While West Virginia recognizes the tort of outrage, also known as intentional infliction of emotional distress, the tort is exceedingly limited and only allows recovery of damages arising from intentional or reckless, extreme, and outrageous conduct by a defendant. *Harless v. First Nat'l Bank,* 289 S.E.2d 692, 703 (W. Va. 1982). Generally, West Virginia law parallels the law in the Rest. (Second) of Torts, § 46, *et seq.* (1965).  For instance, in *Garrett v. Viacom, Inc.,* the defendant, a cable television network, aired a series of programs entitled, *"Music Behind Bars"* that purported to examine prison music programs across the country. One episode of this series documented the music program at Mt. Olive Correctional Facility near Beckley, West Virginia. No. 1:03-cv-22, 2003 WL 22740917 (N.D. W. Va. August 27, 2003).  The episode included an interview with and a musical performance by an inmate by the name Henthorne, who is serving a life sentence for murder of the plaintiff's son. Plaintiff alleged that the defendant inflicted severe emotional distress on her and her daughter by airing the episode, and the defendant's conduct in broadcasting the episode was "extreme and outrageous." The cable channel contended that the television program at issue could not reasonably be construed as "extreme and outrageous" and further asserted that it was privileged as a truthful report on a matter of public interest under the First Amendment. The United States District Court for the Northern District of West Virginia held that the defendant's conduct was not so extreme and outrageous as to permit recovery, and

---

[2] It is obvious to the viewer of the video provided in the Zappin Complaint, that it has a starting point and a stopping point and it is not an edited video. The term "raw" in a television vernacular, indicates that the content of the video has not been modified. Even assuming *arguendo* that Mr. Zappin's claim of editing is correct, for the purposes of this Motion only, it provides no basis to deny the Motion to Dismiss on each count for the valid and clear grounds set forth.

declined to reach the defendant's constitutional argument that the broadcast program was privileged under the First Amendment. *Id.* \*3-5.

The standard in West Virginia for extreme and outrageous conduct is set forth in *Hines v. Hills Dep't Stores, Inc.* 454 S.E.2d 385, 389-90 (W. Va. 1994). To meet this requirement, the court held that the conduct by a defendant must be so outrageous in character and degree as to "go beyond all bounds of decency and be atrocious and utterly intolerable in a civilized community." *Harless*, 289 S.E.2d at 705. Such conduct must be more than unreasonable, unkind, or unfair; it must truly offend community notions of acceptable conduct. The *Harless* Court stated that the emotional distress suffered by the plaintiff making a claim for outrageous conduct "so severe, that no reasonable man could be expected to endure it." *Harless*, 289 S.E.2d at 695, 704; Rest. of Torts § 46 cmt. j (1965). Nothing in the three paragraph portion of Count III meets the requirements set forth by *Harless.* As such, the claim for intentional infliction of emotional distress fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Gray Television Group, Inc. d/b/a WSAZ, respectfully request that this Court enter an order dismissing Plaintiff's Complaint in its entirety, as authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state any cognizable claim upon which relief can be granted under any of the counts set forth therein.

4844-5187-0508.v1

Respectfully submitted,

**GRAY TELEVISION GROUP, INC.
d/b/a WSAZ**

By Counsel

David Allen Barnette (WVSB No. 242)
Vivian H. Basdekis (WVSB No. 10587)
JACKSON KELLY PLLC
P. O. Box 553
Charleston, WV 25322
(304) 340-1327

4844-5187-0508.v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

ANTHONY ZAPPIN,

        Plaintiff,

                                 Civil Action No. 3:15-CV-13706

        vs.

GRAY TELEVISION GROUP, INC.,

        Defendant.

### CERTIFICATE OF SERVICE

        I, David Allen Barnette, do hereby certify that a true and exact copy of the foregoing

**"Defendant's Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint"** was

filed with the Clerk of the Court on this 21st day of January, 2016 via ECF, with copies sent by

U.S. mail to the following parties:


                            Anthony Zappin
                       194 W. 10th Street, Apt. D1
                        New York, NY 10014


                           David Allen Barnette (WVSB No. 242)
                         Vivian H. Basdekis (WVSB No. 10587)
                         JACKSON KELLY PLLC
                         P. O. Box 553
                         Charleston, WV 25322
                         (304) 340-1327

4844-5187-0508.v1