UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

---

| | |
|---|---|
| ANTHONY ZAPPIN, | : |
| Plaintiff, | : Case No. 3:15-cv-13706 |
| - against - | : **FIRST AMENDED COMPLAINT** |
| GRAY TELEVISION GROUP, INC., | : Jury Trial Demanded |
| Defendant. | |

---

Plaintiff Anthony Zappin ("Plaintiff"), proceeding *pro se*, hereby alleges the following against Defendant Gray Television Group, Inc. d/b/a WSAZ Newschannel 3 ("WSAZ"):

## NATURE OF THE CASE

1. This is a civil action brought under state common law for defamation. On or about October 3, 2014, WSAZ engaged in tortious conduct against Plaintiff publishing defamatory statements and video as set forth in detail below. These defamatory statements and videos were re-published by WSAZ on or about December 16, 2014. As a result of WSAZ's wrongful actions, Plaintiff has suffered significant harm and damages. Plaintiff seeks both actual and punitive damages against WSAZ as well as injunctive relief.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Anthony Zappin is a resident of the State of New York with an address of 194 W. 10th Street, #D1, New York, NY 10014.

3. Upon information and belief, Defendant Gray Television Group, Inc. d/b/a/ WSAZ Newschannel 3 has a principal place of business at 4370 Peachtree Road NW, Atlanta GA, 30319. Further, upon information and belief, Gray Television Group, Inc. d/b/a/ WSAZ

Newschannel 3 maintains an office in West Virginia at 111 Columbia Avenue, Charleston, WV 25302.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there exists diversity of citizenship among the parties to this action and the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the actions and wrongful conduct underlying Plaintiff's claims occurred in this Judicial District.

## FACTUAL ALLEGATIONS

### October 3, 2014 Proceeding

6. On or about October 3, 2014, Plaintiff was attending a proceeding in the matter *State v. Leigh Anne Zappin*, Case No. 13-F-92 (Cabell Co. Cir. Ct.) before Judge Alfred Ferguson. WSAZ reporter Brad Myers attended and filmed the proceeding. Additionally, the proceeding was attended by Herald Dispatch reporter Curtis Johnson.

7. While waiting for Mrs. Zappin's case to be called, both Messrs. Myers and Johnson began to harass Plaintiff, Mrs. Zappin, her family and her counsel in the courtroom. They began moving around the courtroom taking numerous and gratuitous photographs of Plaintiff, Mrs. Zappin and her family causing a disturbance. This was in violation of West Virginia Trial Court Rule 8.07 restricting the location and use of cameras in the courtroom.

8. At the conclusion of the proceeding, Plaintiff was standing in the hallway outside of Judge Ferguson's courtroom, approximately 25 feet from the entrance of the courtroom, discussing the proceeding with Mrs. Zappin, Jeffrey Zappin (Mrs. Zappin's husband) and Joshua Martin (Mrs. Zappin's counsel).

9.      Shortly after the discussion began, Messrs. Myers and Johnson ran out of Judge Ferguson's courtroom and accosted Plaintiff, Mrs. Zappin and Mrs. Zappin's counsel Joshua Martin.  Mr. Myers had his camera on his shoulder and was recording Plaintiff, Mrs. Zappin, Mr. Zappin and Mr. Martin as soon as he exited the courtroom.  Plaintiff and Mrs. Zappin began to move away from Messrs. Myers and Johnson, but Mr. Johnson immediately rushed and confronted Plaintiff and Mrs. Zappin in the hallway.  Mrs. Zappin and her counsel had previously told Messrs. Myers and Johnson in the courtroom, both before and after the proceeding, that she had no comment thus making Messrs. Myers and Johnson's action wholly unnecessary and harassing.

10.     After being confronted by Messrs. Myers and Johnson, Plaintiff asked Mr. Johnson to move away from Mrs. Zappin.  Mr. Johnson then jammed a tape recorder in Plaintiff's face striking him in the chin.  Startled and scared that it was some other instrument, Plaintiff knocked the tape recorder out of Mr. Johnson's hand.  As Plaintiff went to go pick it up, he was shoved and grabbed by Mr. Johnson.  Plaintiff then stepped on the recorder to trap it from Mr. Johnson, although no damage was caused to it.  While this was taking place, Mr. Myers shoved both Jeffrey Zappin and Joshua Martin (which can be seen in the video discussed *infra*) in order to continue shooting with his video camera.

11.     Plaintiff immediately picked up the recorder, distanced himself from Mr. Johnson who continued to grab Plaintiff and walked to the entrance of the courthouse where security was stationed.  Plaintiff walked up to the security officer stationed at the entrance of the courthouse, stopped, gave the officer the tape recorder and explained that there was an incident in the hallway outside of Judge Ferguson's courtroom.  He asked whether he could go to the Cabell County Sheriff's office next door to file a report against Mr. Johnson.  The security officer asked

3

Plaintiff to wait at the door, which he did. Plaintiff was followed by Mr. Myers throughout, who apparently was continuing to record Plaintiff. At no time did Plaintiff attempt to "flee" the courthouse, but rather walked to where security was stationed to report the incident.

12. Mr. Johnson subsequently appeared at the entrance. The security officer returned his tape recorder. Judge Ferguson's court officer subsequently appeared and directed Plaintiff and Mr. Johnson to go to the Cabell County Sheriff's Department. However, Mr. Johnson continued to make inappropriate gestures at Plaintiff, some of which were captured on camera. For instance, Mr. Johnson gave Plaintiff the finger:



13. Plaintiff subsequently filed a report with the Cabell County Sheriff's Department against Mr. Johnson. Upon information and belief, Mr. Johnson purportedly filed a report against Plaintiff. Plaintiff is aware of no action that was taken by the Cabell County Sheriff's Department based on the reports.

WSAZ's October 3, 2014 Report

14. On or about October 3, 2014, WSAZ began running a story both over-the-air and on their website concerning the incident instigated by Mr. Johnson and Mr. Myers. Upon information and belief, the story aired on WSAZ's mid-day, 5 o'clock and 6 o'clock newscasts

on October 3, 2014, which was seen by thousands of individuals throughout West Virginia and surrounding areas. A written unaccredited story was published on WSAZ.com on October 3, 2014 that also contained a segment anchored by WSAZ employee Tim Irr and reporter Brad Myers. Additionally, WSAZ published a video on October 3, 2014 on WSAZ.com of what it billed as "RAW" footage of the incident as well as a video of an October 3, 2014 newscast that was previously televised. Upon information and belief, the story and videos published on WSAZ.com have been viewed by thousands of individuals throughout the country. In publishing the story and videos, WSAZ has committed tortious conduct through the publication of the story and videos on their website that contain false and defamatory statements concerning Plaintiff.

*The Purported "RAW" Footage Video Is Defamatory*

15. First, on the WSAZ.com story enclosed herewith as Exhibit A, WSAZ claims that the footage is "RAW" footage of the incident. WSAZ's billing of the video is patently false. WSAZ deliberately spliced to video to begin with me stepping on Mr. Johnson's tape recorder in an improper effort to paint me as the aggressor. Upon information and belief, WSAZ had additional footage beginning at least with Mr. Myer's exit from Judge Ferguson's courtroom, which includes Mr. Johnson confronting Plaintiff and Mrs. Zappin. Further, upon information and belief, the purported "RAW" footage video on WSAZ.com was deliberately edited to portray Plaintiff in a false and untrue light.

16. In a telephone call between Dan Fabrizio, WSAZ's News Director, and Plaintiff on October 3, 2014, Mr. Fabrizio admitted that WSAZ had within its possession the additional footage of the confrontation. Mr. Fabrizio taunted Plaintiff that he would need a "subpoena to get the entire footage."

17. WSAZ's conduct in deliberately splicing the video to edit out the misconduct of its own employees and then attempting to bill it as "RAW" footage is defamatory demonstrating a deliberate intent to cast Plaintiff in a false light. It also evidences WSAZ's unethical conduct of not only reporting on a story to which it is involved, but manufacturing salacious headlines in the face of a family's trauma.

18. Upon information and belief, at the time of publication[1] WSAZ has acted with actual malice in that it knew that the published footage was not complete or "RAW" footage and painted Plaintiff in a false and untrue light. Alternatively, WSAZ published the video billing it as "RAW" footage and editing it to portray Plaintiff in an untrue manner with reckless disregard of the truth.

*WSAZ's Statements That Plaintiff "Confronted"*
*Herald-Dispatch Reporter Curtis Johnson*

19. Second, in the print story on WSAZ.com as well as a video posted on WSAZ.com of an October 3, 2014 newscast, WSAZ states incorrectly multiple times that Plaintiff "confronted" Herald-Dispatch report Curtis Johnson. These statements include, but are not limited to:

- In the print story on WSAZ.com, WSAZ states that "Zappin's adult son confronted a reporter for the Huntington newspaper in the courthouse hallway, smashing his tape recorder." (*See* Ex. A.)

- In a subsequent revision to the story, WSAZ published that "Zappin's son, Anthony confronted a Herald-Dispatch reporter … Anthony Zappin confronted Herald-Dispatch reporter Curtis Johnson." (*See* Ex. A.)

---

[1] As of the time of filing this Amended Complaint, the video still appears on WSAZ.com.

6

- On the text overlaying the link (which contains a photograph of Plaintiff and his mother) to a video of a October 3, 2014 newscast posted with the print story reads "Reporter Confronted after Embezzlement Sentencing." (*See* Ex. A.)

- The onscreen graphics of the October 3, 2014 newscast (which are contained on WSAZ.com) read "ZAPPIN'S SON CONFRONTS REPORTER." (*See* Ex. A.)

- During the October 3, 2014 newscast, WSAZ anchor Mr. Tim Irr states that: "Her son confronting a reporter from the Herald-Dispatch." (*See* Ex. A.) This October 3, 2014 newscast was aired on television throughout West Virginia and posted on WSAZ.com.

- During the October 3, 2014 newscast, WSAZ reporter Mr. Myers states that: "Her son Anthony Zappin confronting a Herald-Dispatch report, knocking his recorder to the ground and stomping it." (*See* Ex. A.) This October 3, 2014 newscast was aired on television throughout West Virginia and posted on WSAZ.com.

- During the October 3, 2014 newscast, WSAZ reporter Mr. Myers states that: "Moments later as the family was leaving the courtroom, we tried to speak with the Zappins. But, that's when Anthony Zappin confronted Herald-Dispatch reporter Curtis Johnson." (*See* Ex. A.) This October 3, 2014 newscast was aired on television throughout West Virginia and posted on WSAZ.com.

Each and every one of the above highlighted statements is false. Plaintiff and Mrs. Zappin were approached, accosted and confronted by Mr. Johnson. Contrary to the overlaid text on Plaintiff's photograph and the onscreen graphics placed over the October 3, 201 newscast, the video of the October 3, 2014 newscast does not show Plaintiff "confronting" any reporter, including Mr.

Johnson. Moreover, Mr. Johnson's recorder was not "smashed," and, upon information and belief, was in working order when returned to him.

20. Upon information and belief, the portion of WSAZ's footage edited out of the "RAW" video would reveal that the above-quoted statements are false. Also, several witnesses to the incident can competently testify that the above-quoted statements are false.

21. Upon information and belief, at the time of the foregoing publications, WSAZ acted with actual malice in that WSAZ knew that the statements in its article and newscasts that Plaintiff "confronted" Herald-Dispatch reporter Curtis Johnson and "smashed" the recorder were false and untrue. Alternatively, WSAZ published such statements with reckless disregard of whether they were false and untrue.

*WSAZ's Statements That Plaintiff*
*Attempted to "Leave" the Courthouse*

22. Third, in the print story on WSAZ.com, WSAZ states that Plaintiff "tried to leave the courthouse" after the incident. (*See* Ex. A.) WSAZ's statement is false. Plaintiff did not attempt to "leave" the courthouse, but rather walked to where the court officers were stationed at the front of the courthouse to report the incident.

23. During the October 3, 2014 newscast aired throughout West Virginia and posted on WSAZ.com, WSAZ reporter Mr. Myers states: "Zappin later tried to leave the courthouse, but was stopped by security." (*See* Ex. A.) WSAZ's statement is false. Again, Plaintiff did not attempt to "leave" the courthouse, but rather walked to where the court officers were stationed at the front of the courthouse to report the incident. Moreover, he was never "stopped" by security, but rather initiated contact with court officers himself to report the incident.

24. Upon information and belief, at the time of the foregoing publications, WSAZ acted with actual malice in that WSAZ knew that the statements in its article and newscasts that

8

Plaintiff attempted to "leave" the courthouse and was "stopped by security" were false and untrue. Alternatively, WSAZ published such statements with reckless disregard of whether they were false and untrue.

*WSAZ'S Statements That Plaintiff May Be Charged with a Crime*

25. Lastly, in the print story and in the October 3, 2014 newscast aired throughout West Virginia and published on WSAZ.com, WSAZ states that Plaintiff "may be charged in the incident." (*See* Ex. A.) WSAZ never states what Plaintiff was to be charged with or what conduct constituted a criminal offense. Rather, WSAZ's statements vaguely and falsely allege that Plaintiff committed some type of criminal conduct. Regardless, WSAZ's statements are false. Plaintiff was never contacted by police concerning the incident and has not been charged with any criminal offense. He is unaware of any police investigation against him that could have led to charges from the incident.

26. Upon information and belief, at the time of the foregoing publications, WSAZ acted with actual malice in that WSAZ knew that the statements in its article and newscasts alleging and insinuating that Plaintiff had committed a criminal offense were false and untrue. Alternatively, WSAZ published such statements with reckless disregard of whether they were false and untrue. WSAZ's reporting and insinuation that Plaintiff committed any type of crime is constitutes *per se* defamation.

<u>WSAZ's Subsequent Behavior</u>

27. On November 20, 2014, Plaintiff sent WSAZ a detailed letter to Matt Jaquint, General Manager of WSAZ, politely requesting that WSAZ remove the video and story from WSAZ.com as many of the statements were untrue and WSAZ's characterization of the incident was materially misleading constituting defamation. On November 25, 2014, Plaintiff was

9

contacted by David Barnette of *Jackson Kelly PLLC*, attorney for WSAZ, who refused to take down the defamatory material as well as made inappropriate threats towards Plaintiff.

28. Plaintiff attempted to reach out on other occasions to Mr. Barnette about the removal of the defamatory material from WSAZ.com. Mr. Barnette has not provided a response.

29. Upon information and belief, WSAZ has continued to update and alter the story on WSAZ.com to ensure that it is continues to be indexed by Google. These actions evidence a deliberate intent to harm Plaintiff and his family. WSAZ continues to maintain the website containing the defamatory statements and video to this day.

Plaintiff Has Suffered Damages

30. As a result of the publication WSAZ's statements and the acts of WSAZ detailed above, Plaintiff has suffered economic damages in the loss and deterioration of his business and reputation in his profession. Plaintiff has further been held up to public contempt, ridicule, disgrace and prejudice as a result of WSAZ's statements and conduct, which is evidenced in the "Comments" section of the WSAZ.com story. (*See* Ex. A.) Most importantly, WSAZ statements materially prejudiced Plaintiff during his matrimonial proceeding pending in New York State concerning the custody of his young child. WSAZ's false statements inaccurately painting Plaintiff as the aggressor in the above described incident with Herald-Dispatch reporter Curtis Johnson has affected Plaintiff's access to his young son. In fact, during Plaintiff's custody and access trial in New York State in November and December 2015, WSAZ transmitted the October 3, 2014 newscast and the video billed as "RAW" footage of the incident to counsel for Plaintiff's wife and the Attorney for the Child, upon which the videos were played during the proceeding. Plaintiff fears that as a result of WSAZ's false statements playing during the

proceeding he will further lose custody and access rights to his young son among suffering other related damages.

## COUNT I
## DEFAMATION

31. Plaintiff re-alleges and incorporates by reference paragraphs 1-30 of this Complaint as if fully set forth herein.

32. WSAZ has made false and defamatory statements concerning Plaintiff; to wit WSAZ has published both verbally and in writing false and defamatory statements about Plaintiff designed to inflict harm.

33. WSAZ's statements are statements of fact and are demonstrably false.

34. WSAZ's statements were published to thousands of third-party individuals verbally through live television and video on WSAZ.com as well as in writing on WSAZ.com beginning on October 3, 2014.

35. WSAZ enjoys no privilege for concerning its statements. WSAZ knew that its statements were false and made such statements with reckless disregard for the truth. And, WSAZ's statements constitute *per se* defamation as they falsely assert Plaintiff committed a crime.

36. As a proximate result of WSAZ's defamatory statements, Plaintiff has suffered harm and is entitled to actual and punitive damages in an amount to be proven at trial as well as injunctive relief.

## JURY TRIAL DEMANDED

37. Plaintiff demands a jury on all issues which may be properly tried by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court:

(a) Enter judgment in favor of Plaintiff against Defendant;

(b) Enter judgment awarding Plaintiff compensatory damages on all counts herein to compensate Plaintiff for Defendant's activity complained of herein and for any injury complained of herein, inclusive of interest and costs, in an amount to be determined at trial;

(c) Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as allowed by applicable state and federal law in an amount to be determined at trial;

(d) Enter an injunction preventing Defendant from engaging in any activity complained of herein or form causing any of the injury complained of herein and from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activity complained of herein or form causing any of the injury complain of herein;

(e) Enter judgment awarding Plaintiff his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

(f) Order such other relief that the Court deems just and appropriate.


Dated: February 9, 2016
       New York, NY

                                        */s/ Anthony Zappin*_____
                                        Anthony Zappin
                                        194 W. 10th Street, Apt. D1
                                        New York, NY 10014
                                        (304) 654-6195 (tel.)
                                        anthony.zappin@gmail.com
                                        *Plaintiff, Pro Se*

# EXHIBIT A

Judge Alfred Ferguson said, "You stole from the poor, you stole from a business that was trying to help people that have less than you and I do."

Zappin said, "I need to get some mental health treatment and please let me go and let me heal, please."

To that, Judge Ferguson said, "I'm not going to let you go to some place outside the penitentiary."

She pleaded with the judge, saying, "Please your honor, let me go get help, please, please."

But all of that information did not change the sentencing. She will be transferred to the Tygart Valley Regional Jail before serving the rest of her sentence at the Lakin Correctional Center in Mason County.

Zappin will be eligible for parole in a year. She has been credited for time served, which she started in early November.

Special Prosecutor in the case Kevin Lawson said, "I think it was really just her trying to manipulate the system, saying that there was mental health problems. I think the judge saw through that."

---

**UPDATE 10/3/14 @ 5:55 p.m.**
HUNTINGTON, W.Va. (WSAZ) -- Two years after stealing more than $32,000 from the Huntington Foodbank, Leigh Anne Zappin was back in court Friday to be sentenced for the crime. However, it's what happened afterward in the hallway outside of the courtroom when things really took a wild turn.

Zappin's son, Anthony, confronted a Herald-Dispatch reporter, knocking his recorder to the ground and stomping it. It happened moments after Zappin learned his mom would be heading to prison.

Cabell Circuit Judge Alfred Ferguson sentenced Leigh Anne Zappin to one to 10 years. She had previously pleaded guilty to stealing tens of thousands of dollars from the Huntington Foodbank during a nine-month span in 2012. Judge Ferguson said it's at least the fourth time Zappin had embezzled money from a business.

"You should never be in a position of trust where you handle money for anybody you work for, because you've proven that," Ferguson said. "I am saying you've got a character flaw there."

Zappin complained to Ferguson that the prison sentence will prevent her from getting ongoing therapy.

"I can't access therapy and keep making progress," Zappin said, "I can't."

But Ferguson did not budge.

"I've given a lot of consideration to this," Ferguson said. "You're a thief. You've been stealing. That's what it all comes down to it. You've been stealing, and you've really not wanted to admit that."

Zappin then told the judge she takes full responsibility for her actions.

"I am not putting the blame on anybody else," Zappin said. "I really and truly am not. I am taking responsibility for this myself."

"But you need to pay for what you have done," Judge Ferguson said. "Ma'am, this is your forth time."

Moments later, while leaving the courtroom, WSAZ tried speaking with the Zappin's. But that's when Anthony Zappin confronted Herald-Dispatch reporter Curtis Johnson.

Anthony Zappin tried to leave the courthouse, but was stopped by security. That's when Zappin claimed he was the victim.

"No, {Johnson} assaulted me," Anthony Zappin said. "{Johnson} assaulted me with his recorder."

WSAZ.com contacted Curtis Johnson, who denies assaulting Zappin "in any fashion." As of now, WSAZ.com has yet to learn of any charges filed by Anthony Zappin, but he himself may be charged in the incident.

As for Leigh Anne Zappin, Judge Ferguson gave her a full month before having to turn herself in to begin her prison sentence. Judge Ferguson said that will allow her to set up care for her ailing husband.

---

**UPDATE 9/3/14 @ 11 a.m.**
HUNTINGTON, W.Va. (WSAZ) -- The former executive director of the Huntington Area Food Bank has been sentenced to prison after she pleaded guilty to one count of embezzlement earlier this year.

Judge Alfred Ferguson sentenced Leigh Ann Zappin, 57, of Huntington, to 1-10 years during a hearing Friday. During the sentencing, Ferguson called Zappin a "thief."

Our crew in the courtroom says that following the hearing, Zappin's adult son confronted a reporter for the Huntington newspaper in the courthouse hallway, smashing his tape recorder. Anthony Zappin tells WSAZ.com that he was confronted first by the reporter.

Leigh Ann Zappin was indicted on 17 counts in January 2013 following an investigation by W.Va. State Police.

The indictment charged Zappin with stealing $23,700 from the Food Bank during her tenure as the organization's leader.

Zappin resigned from the post in September 2012 after being confronted with the allegations.

16 counts of forgery and uttering were dropped as part of the agreement.

As part of the plea, Zappin was required to pay restitution of nearly $30,000 to the Board of Risk Management and the Food Bank.

During the plea hearing, Zappin told the court she had PTSD. She also said at one point she was "hearing voices screaming in her head."

Zappin starting working at the food bank in 2008, first under a community service program for a prior embezzlement conviction, then as its leader, starting in the fall of 2010 and until her resignation.

The Food Bank has insurance to cover the financial loss.

**ORIGINAL STORY 5/5/14**

HUNTINGTON, W.Va. (WSAZ) – The former executive director of the Huntington Area Food Bank has pleaded guilty to one count of embezzlement.

Leigh Ann Zappin, 57, of Huntington, entered the plea Monday morning during a hearing in Cabell County Circuit Court.

Zappin was indicted on 17 counts in January 2013 following an investigation by W.Va. State Police.

The indictment charged Zappin was stealing $23,700 from the Food Bank during her tenure as the organization's leader.

Zappin resigned from the post in September 2012 after being confronted with the allegations.

16 counts of forgery and uttering were dropped as part of the agreement.

Zappin will be sentenced in June. There is no word on what type of sentence she will receive. Prosecutors say that decision will be up to the judge. She could receive a sentence of 12 months or more in in jail

She will also be required to pay restitution of nearly $30,000 to the Board of Risk Management and the Food Bank.

During the hearing, Zappin told the court she had PTSD. She also said at one point she was "hearing voices screaming in her head."

Zappin starting working at the food bank in 2008, first under a community service program for a prior embezzlement conviction, then as its leader, starting in the fall of 2010 and until her resignation.

The Food Bank has insurance to cover the financial loss.

The nonprofit food bank helps the needy in 17 counties in Ohio, Kentucky, and West Virginia.

**Statement from ~ Debra Johnson-Tourigny, Food Bank Board President**
"With a new board and a new name we are proud of the direction we are taking and excited about the future. Today's plea brings an end to the court process, but for us, this chapter has been closed for some time. We appreciate those who have continued to support our mission as we continue to provide food to hungry children, seniors and families who need our help."

Comments are posted from viewers like you and do not always reflect the views of this station.

9 Comments    WSAZ

♥ Recommend  1        ↪ Share



Join the discussion…



**Betty Meadows** • 2 years ago

Wow, they hired someone that was doing community service for embezzlement to run the place. R

29 ⌃ | ⌄ • Reply • Share ›



**chs71** • a year ago

I love how she says she has PTSD, what a crock. The woman is a thief, this wasn't the first time sh
And to the people that made her the Director, shame on you! That is like putting the prisoners in ch
I admire Judge Ferguson for telling that woman exactly what she is, but for her to tell him she can't
prison, too bad! I hope she is kept in prison for the full 10 years, I am so tired of people lying, cheat
it.
Also that son of hers appears to have anger issues, for him to act and do what he did. I hope they
does time as well, looks like the apple didn't fall far from the tree.

5 ⌃ | ⌄ • Reply • Share ›



**WVGleeman** • a year ago

Why not order treatment while serving her time? The point of jail is to reform is it not? I'm not sayin
is begging for. Just help her behind bars.

3 ⌃ | ⌄ • Reply • Share ›



**chs71** • a year ago

This woman has blamed more people and come up with more excuses why she stole the money th
reason she did this is because she is greedy and thought she could continue to get by with stealing
I applaud Judge Ferguson for standing up to someone that is use to getting their way. Before she s
because of "domestic abuse", come on woman quit lying and take the punishment that you were h

2 ⌃ | ⌄ • Reply • Share ›



**Tracy** • a year ago

My thought exactly ... not a smart move.

2 ⌃ | ⌄ • Reply • Share ›



**Digi13** • a year ago

Glad this judge FINALLY stood up and sentenced her! How did she keep getting those jobs? There
HONEST people turned down is another sad part to this story!

1 ⌃ | ⌄ • Reply • Share ›



**Goldie Digger** • a year ago

Anthony Zappin was only trying to take up for his poor stealing of a thug mother, plus I can't believ
working on the bench!

1 ⌃ | ⌄ · Reply · Share ›



**James Layne** · a year ago
this is the 4 th x she got caught stealing...
.but TURN HER LOOSE ,, SHE DID SAY """ I'M SORRY !!!! "" isn't that the way it's done.??

1 ⌃ | ⌄ · Reply · Share ›



**tim** · a year ago
oh im sorry was he not just coming outta the court room in which his mother was sentenced one to my opinion. hes lucky all he got was a broken recorder. people r sick of it!

1 ⌃ | ⌄ · Reply · Share ›

**ALSO ON WSAZ**

**Former Marshall University student athlete killed in car crash**
2 comments · 3 days ago

**HPD cruiser and car collide nea**
1 comment · 3 days ago

**Man arrested after stolen items found at mother's home**
1 comment · 16 hours ago

**Two arrested for stealing from**
2 comments · 4 days ago

 Subscribe     Add Disqus to your site Add Disqus Add    🔒 Privacy