IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ANTHONY ZAPPIN,

    Plaintiff,

v.                                          Case No.:   3:15-cv-13706

GRAY TELEVISION GROUP, INC.,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On October 5, 2015, Plaintiff Anthony Zappin ("Plaintiff") filed a *pro se* complaint against Defendant Gray Television Group, Inc., d/b/a WSAZ NewsChannel 3 ("Defendant"), based on Defendant's coverage of an incident between Zappin and a reporter from the Huntington, West Virginia Herald-Dispatch, which occurred at the Cabell County Courthouse in Huntington. (ECF No. 1). In response, Defendant filed a Motion to Dismiss Plaintiff's Complaint on January 21, 2016. (ECF No. 5). On February 9, 2016, Plaintiff filed his First Amended Complaint alleging a single count of defamation against Defendant.[1] (ECF No. 9 at 11). Defendant subsequently filed a Motion to Dismiss Plaintiff's First Amended Complaint on February 23, 2016. (ECF No. 10). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for

---

[1] Plaintiff asserted in his Memorandum in Opposition to Defendant's Motion to Dismiss that he was "dropp[ing]" two other tort claims alleged in his original complaint as those claims were duplicative of his defamation claim. (ECF No. 7 at 1 n.1).

submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the materials supplied by the parties and finds the issues to be clear. Accordingly, oral argument is not necessary for resolution of the pending motions to dismiss. For the reasons set forth herein, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, (ECF No. 10), be **GRANTED**; that Plaintiff's First Amended Complaint, (ECF No. 9), be **DISMISSED**, with prejudice; and that this action be removed from the docket of the Court. In addition, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's Complaint, (ECF No. 5), be **DENIED**, as moot.

## I. Relevant Facts

The following facts are derived from Plaintiff's First Amended Complaint. On October 3, 2014, Plaintiff attended a sentencing hearing at the Cabell County Courthouse for his mother, who was convicted of embezzling funds from the Huntington Foodbank. (ECF No. 9 at 2, 14). After the hearing concluded, Plaintiff entered the hallway outside of the courtroom and began to discuss the proceeding with his mother, his father, and his mother's attorney. (*Id.* at 2). According to Plaintiff, Brad Myers, who is a reporter for Defendant, and Curtis Johnson, who is a reporter for the Herald-Dispatch, "ran out" of the courtroom and "accosted" the group. (*Id.* at 3). Plaintiff asked Johnson to move away from his mother, and Johnson "then jammed a tape recorder in Plaintiff's face striking him in the chin." (*Id.*) Plaintiff responded by knocking the tape recorder from Johnson's hand, and Johnson reacted by shoving and grabbing Plaintiff. (*Id.*) Thereafter, Plaintiff stepped on Johnson's tape recorder "to

2

trap it from" Johnson, but he did not damage the recorder. (*Id.*) Plaintiff then picked up the recorder and began walking toward the entrance of the courthouse, where he approached a court officer and explained what had occurred. (*Id.*) He also handed Johnson's tape recorder to the officer. (*Id.*) Plaintiff asked the officer if he could leave the courthouse to go file a report regarding the incident with the Cabell County Sheriff's office, and the officer asked him to wait. (*Id.* at 3-4). Eventually, Johnson caught up with Plaintiff at the courthouse entrance and retrieved his tape recorder from the officer. (*Id.* at 4). Both Plaintiff and Johnson subsequently filed reports against each other with the sheriff's office; however, Plaintiff alleges that no action was taken by the sheriff's office as to either report. (*Id.*)

During several newscasts that day reporting on the sentencing hearing and ensuing commotion, Defendant's employees showed video of the dispute between Plaintiff and Johnson at the courthouse, which had been recorded by Myers. (*Id.* at 4-5). Defendant's employees posted at least one of the television reports on Defendant's website along with a separate video described as "raw" footage of the incident and a written story regarding the events at the courthouse. (*Id.* at 5). As pertinent here, the television report posted online and the written report stated that Plaintiff had "confronted" Johnson, "smash[ed]" or "stomp[ed]" on Johnson's tape recorder, and then "tried to leave the courthouse." (*Id.* at 6-8). Both the television report posted online and the written report also asserted that Plaintiff "may be charged in the incident." (*Id.* at 9). According to Plaintiff, on that same day, he contacted Dan Fabrizio, Defendant's News Director, and inquired about additional footage that Myers may have taken of the incident. (*Id.* at 5). Fabrizio indicated that he was in possession of additional footage, but he would not relinquish it to Plaintiff without a subpoena.

3

(*Id.*) On November 20, 2014, Plaintiff sent a letter to Defendant's General Manager requesting that the video and story be removed from Defendant's website. (*Id.* at 9). Defendant's counsel responded to the letter and informed Plaintiff that the video and story would not be removed. (*Id.* at 10).

## II. Complaint and Motion to Dismiss

In his First Amended Complaint, Plaintiff alleges that Defendant committed defamation based on four statements made by Defendant's employees during Defendant's television report regarding the incident, or on Defendant's website. First, Plaintiff claims that Defendant's employees' labeling of the footage contained on Defendant's website as "raw" is defamatory because the video has been "deliberately spliced" to begin with Plaintiff stepping on Johnson's tape recorder in an effort to portray Plaintiff as the aggressor. (*Id.* at 5). Plaintiff insists that Defendant's employees acted with actual malice when they published the footage online and described it as "raw" since they knew that the footage was incomplete and "painted Plaintiff in a false and untrue light." (*Id.* at 6). In the alternative, Plaintiff asserts that Defendant's employees' billing of the video as "raw" recklessly disregarded the truth of the matter. (*Id.*)

Second, Plaintiff alleges the statement in both the television news report and written report that Plaintiff "confronted" Johnson is defamatory. (*Id.* at 6-7). Plaintiff asserts that Johnson approached and confronted him, not the other way around. (*Id.* at 7). Plaintiff claims that Defendant's employees acted with actual malice when they published this statement as they knew that the statement was false or untrue. (*Id.* at 8). Alternatively, Plaintiff asserts that Defendant's employees published the statement with reckless disregard for whether it was true. (*Id.*)

4

Third, Plaintiff claims the assertion in the television report and written report that he "tried to leave the courthouse, but was stopped by security" constitutes defamation. (*Id.* at 8-9). Plaintiff contends that he did not attempt to leave the courthouse, nor was he stopped by security; rather, Plaintiff walked to where a court officer was stationed to report the incident. (*Id.* at 8). Again, Plaintiff claims that Defendant's employees acted with actual malice in publishing the statement or published the statement with reckless disregard for whether it was true. (*Id.* at 8-9).

Fourth, Plaintiff alleges the comment in the television report and written report that Plaintiff "may be charged in the incident" is *per se* defamatory. (*Id.* at 9). Plaintiff asserts that Defendant's employees never explained what conduct of his established a criminal offense, and in any event, Plaintiff was never contacted by police regarding the incident or charged with a crime. (*Id.*) Plaintiff insists that Defendant's employees knew their insinuation that Plaintiff had committed a crime was false at the time of publication, or that Defendant's employees published the statement with reckless disregard as to its truth. (*Id.*)

On the subject of damages, Plaintiff claims that Defendant's employees' publication of the above defamatory statements have caused him economic harm "in the loss and deterioration of his business and reputation in his profession" as an attorney. (*Id.* at 10). In addition, Plaintiff asserts that the defamatory statements "materially prejudiced Plaintiff during his matrimonial proceeding pending in New York State concerning the custody of his young child." (*Id.*) Plaintiff insists that Defendant's employees' portrayal of him as the aggressor in this incident has affected his "access to his young son" and that the "raw" footage was introduced during Plaintiff's custody trial. (*Id.*) Plaintiff seeks compensatory and punitive damages as

5

well as an injunction preventing Defendant from engaging in any activity causing the injury described in the First Amended Complaint. (*Id.* at 12).

On February 23, 2016, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 10). Defendant argues that Plaintiff's defamation claim fails for a number of reasons. First, Defendant contends that Plaintiff is a limited purpose public figure, and as such, an actual malice standard applies to Plaintiff's defamation claim. (ECF No. 11 at 4-6). Defendant states that Plaintiff cannot meet an actual malice standard, and thus, his defamation claim must be dismissed. (*Id.* at 6). Second, to the extent that Plaintiff is considered a private figure, which would require a showing of negligence on Defendant's part, and not actual malice, Defendant maintains that Plaintiff's defamation claim cannot survive a motion to dismiss. (*Id.* at 7). According to Defendant, none of the statements with which Plaintiff takes issue is defamatory, because each one is merely the expression of an opinion, and the "'sting' of the defamatory content arises not from the news 'statements' (which [Plaintiff] alleges are defamatory), but rather, from Plaintiff's own public misconduct." (*Id.* at 9-10). Additionally, Defendant asserts that the statements were not false. (*Id.* at 10-12). Defendant stresses that the "raw" video footage of the incident demonstrates that the statements made during the television newscast and in the online article were true. (*Id.* at 11). Defendant also claims that Johnson filed a report against Plaintiff with the Cabell County Sheriff's Department the day after the incident; as such, the statement that Plaintiff "may be charged in the incident" was accurate. (*Id.*) Furthermore, Defendant argues that the allegedly defamatory statements are covered by the fair-report privilege, and consequently, Plaintiff's defamation claim cannot succeed. (*Id.* at 12-14). Finally, Defendant insists that Plaintiff cannot establish that any injury resulted

6

from Defendant's actions because Plaintiff has tarnished his own reputation by committing misconduct, both during this incident and in his ongoing divorce case.[2] (*Id.* at 14-15).

Pursuant to Federal Rule of Civil Procedure 6(d) and Local Rule of Civil Procedure 7.1(a)(7), Plaintiff was required to file his response to Defendant's motion to dismiss his amended complaint within seventeen days of service. To date, Plaintiff has not filed a response to the motion. Nevertheless, the undersigned has considered the arguments contained in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, (ECF No. 7), which he filed in response to Defendant's motion to dismiss the original complaint, as many of those arguments are applicable to the Defendant's motion to dismiss the amended complaint.

### III. Standard of Review

Defendant requests dismissal of Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

---

[2] Defendant refers to "federal court orders and published news articles" reflecting the damage Plaintiff has done to his reputation. Indeed, Plaintiff was sanctioned $10,000 by the Supreme Court of New York for his conduct during his divorce proceedings. *Zappin v. Comfort*, 49 Misc. 3d 1201(A), 2015 WL 5511519 (N.Y. Sup. Ct. Sept. 18, 2015). According to the Court's Order, that conduct included using "intemperate and uncivil language" in documents filed with the court, attaching a note to a motion calling the presiding judge pathetic, repeatedly accusing the presiding judge of lying in open court, sending "taunting emails" to opposing counsel concerning counsel's personal life, and creating a website to denigrate the attorney representing Plaintiff's son in the proceedings. *Id.* at *2-*8.

7

The Supreme Court explained the "plausibility" standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While the court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of "a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S at 555).

Courts are required to liberally construe *pro se* complaints, like the one filed in this action. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading "to include claims that were never presented," *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir.

2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

"Matters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker,* 462 F. App'x 348, 352 (4th Cir. 2012). If a court considers matters outside the pleadings, then "the motion must be treated as one for summary judgment," and the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, in considering "whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). A court may also consider evidence integral to the complaint (if there is no dispute as to the evidence's authenticity) and matters of public record in deciding a motion to dismiss without converting the motion into one for summary judgment. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### IV.  Discussion

In West Virginia, allegations of libel or slander are prosecuted under the broad category of defamation. *Workman v. Kroger Ltd. P'ship I*, Case No. 5:06-cv-0446, 2007 WL 2984698, *4 (S.D.W.Va. Oct. 11, 2007) (citing *Greenfield v. Schmidt Baking Co., Inc.*, 485 S.E.2d 391, 399 (W. Va. 1997)); *Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 26 (W. Va. 2002). Under West Virginia law, "the essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury."

*Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983).[3] With respect to the first element, a statement is defamatory if it tends to "reflect shame, contumely, and disgrace" upon an individual, or "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (quoting Restatement (Second) of Torts § 559 (1977)); Syl. pt. 1, *Sprouse v. Clay Commc'n, Inc.,* 211 S.E.2d 674 (W. Va. 1975). At common law, a statement is defamatory *per se* if its defamatory meaning is readily apparent on its face, or if the statement falls into one of the traditional slander *per se* categories: imputation of (1) a crime of moral turpitude; (2) a loathsome disease; (3) a matter affecting the plaintiff's business; or (4) unchastity. *See Mauck v. City of Martinsburg*, 280 S.E.2d 216, 219 n.3 (W. Va. 1981). It is worth noting that statements of opinion cannot form the basis for a defamation action under West Virginia law unless the opinion "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Long v. Egnor*, 346 S.E.2d 778, 788 (W. Va. 1986) (quoting Syl. pt. 4, *Havalunch, Inc. v. Mazza*, 294 S.E.2d 70 (1981)). As to the third element (falsity), the West Virginia Supreme Court of Appeals has recognized:

> The law of libel takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

Syl. pt. 4, *Suriano v. Gaughan*, 480 S.E.2d 548 (W. Va. 1996). Regarding the fifth element (negligence on the part of the publisher), "the conduct of the defendant is to

---

[3] Because Plaintiff's First Amended Complaint fails to state a claim under the private individual standard for a defamation claim, the undersigned does not address the more demanding public figure standard.

10

be measured against what a reasonably prudent person would have done under the same or similar circumstances." *Crump*, 320 S.E.2d at 77. With these standards in mind, the undersigned turns to each of the allegedly defamatory statements described in Plaintiff's amended complaint.

### A. Labeling of the Online Video as "Raw"

Plaintiff alleges that Defendant's employees posted a video of the incident to Defendant's website and described the video as "raw" footage of what transpired after the sentencing hearing. (ECF No. 9 at 5). Plaintiff insists that the footage was not "raw" as Defendant's employees "deliberately spliced [the] video to begin with [Plaintiff] stepping on Mr. Johnson's tape recorder in an improper effort to paint [Plaintiff] as the aggressor." (*Id.*) According to Plaintiff, Defendant's News Director admitted that additional footage of the incident exists. (*Id.*)

As a preliminary matter, the undersigned finds it appropriate to consider the videos of the incident contained on Defendant's website in deciding Defendant's motion to dismiss.[4] Although a court typically cannot entertain matters outside of the pleadings in resolving a motion to dismiss, an exception exists where evidence is incorporated into the complaint or integral to the claims contained in the complaint. *See Anand*, 754 F.3d at 198; *Kolon Indus., Inc.*, 637 F.3d at 448. Here, Plaintiff's claims explicitly rely on the contents of the videos contained on Defendant's website. Indeed, Plaintiff goes so far as to include a screen capture from the "raw" video in his First Amended Complaint. (ECF No. 9 at 4). Accordingly, Plaintiff's repeated references to the videos in his First Amended Complaint have the effect of incorporating the videos

---

[4] The videos can be accessed on Defendant's website: http://www.wsaz.com/home/headlines/Former-Food-Bank-Director-Pleads-Guilty-to-Embezzlement---257954081.html (last visited March 29, 2016).

11

into the complaint. Other federal courts have likewise considered videotape evidence that is incorporated by reference into a complaint when deciding motions to dismiss. *See Bogie v. Rosenberg*, 705 F.3d 603, 608-09 (7th Cir. 2013); *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 498 n.1 (S.D.N.Y. 2013); *Garcia v. Bloomberg*, 865 F. Supp. 2d 478, 483 n.1, 492 (S.D.N.Y. 2012); *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 404 (E.D.N.Y. 2004).

In considering evidence incorporated into or integral to the complaint, if the evidence "incontrovertibly contradicts the allegations in the complaint," then the evidence "ordinarily controls." *Bogie*, 705 F.3d at 609; *cf. Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("If [an] appended document [to the complaint] … reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."). In other words, should a conflict arise between Plaintiff's description of the incident in his First Amended Complaint and the videos contained on Defendant's website, then the video will control if the video's depiction of the incident irreconcilably conflicts with Plaintiff's recollection. *Cf. Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (recognizing that, where authenticated videotape evidence obviously renders deposition testimony untrue, that testimony may not be used to create a genuine issue of material fact on summary judgment). This principle is animated by judicial economy, and quite plainly, common sense.

Having reviewed the "raw" video incorporated by reference into Plaintiff's First Amended Complaint, the undersigned finds that Plaintiff cannot state a plausible defamation claim related to Defendant's employees' labeling of the footage as "raw." To begin, it is difficult to comprehend how describing the video as "raw" footage reflected shame and disgrace on Plaintiff or harmed his reputation in the community.

12

While Plaintiff alleges in his complaint that the video was edited to make him appear as the aggressor, Plaintiff's actions in the video speak for themselves. The "raw" video begins with the sound of Johnson's tape recorder sliding across the floor. Plaintiff can clearly be seen forcefully stepping on the tape recorder. He then picks up the recorder and hurries to the front of the courthouse where a court officer stands between Plaintiff and the exit. Plaintiff and the court officer appear to exchange words and Plaintiff stands to the side of the entrance, repeatedly stating that Johnson "assaulted" him with the tape recorder. The footage ends with Plaintiff being told by a court officer that he can file a report about the incident next door to the courthouse. It is not apparent from the video that any editing of the footage occurred to portray Plaintiff as the aggressor. Moreover, it is implausible that Defendant possessed additional video footage showing the face-to-face scuffle that occurred between Plaintiff and Johnson seconds earlier, but decided to "splice" out what was arguably the most attention-grabbing segment of the video for the sole purpose of casting Plaintiff in a negative light. Given that the goal of any news station is to increase its viewership, such conjecture defies common sense. Clearly, Plaintiff cannot establish at the pleading stage that the labeling of the footage as "raw" constituted a defamatory statement.

In addition, Plaintiff's claim cannot meet the falsity element of a defamation claim. The term "raw" when used to describe footage can take on multiple meanings. Here, it seems the term was used to indicate that Defendant's employees did not edit the video posted to the website. Having reviewed the video, this use of the term "raw" is truthful. No video editing or effects are apparent from the video. Consequently, Plaintiff's First Amended Complaint does not state a plausible defamation claim related to the description of the video as "raw" footage.

### B. Statements that Plaintiff Confronted Johnson

Next, Plaintiff takes issue with Defendant's employees stating in a written story and during a newscast, a video of which was later posted to Defendant's website, that Plaintiff "confronted" Johnson. (ECF No. 9 at 6-8). Plaintiff asserts that he was "approached, accosted and confronted by Mr. Johnson." (*Id.* at 7). Plaintiff insists that Defendant's video recording of the incident does not show him confronting Johnson. (*Id.* at 7-8).

Plaintiff's defamation claim on this ground flounders because there is no defamatory statement. *See Cunningham Energy, LLC v. Outman*, No. 2:13-cv-20748, 2013 WL 5274361, at *3 (S.D.W.Va. Sept. 18, 2013) (recognizing that "[w]hether a statement is capable of defamatory meaning is a question of law."). By definition, the term "confront" conveys no particular judgment. Merriam-Webster's Dictionary defines confront as "(1) to face especially in challenge; (2) (a) to cause to meet: bring face-to-face; (b) to meet face-to-face."[5] Random House Dictionary similarly defines confront as "(1) to face in hostility or defiance; oppose; (2) to present for acknowledgement, contradiction, etc.; set face-to-face; (3) to stand or come in front of; stand or meet facing."[6] To say that one person confronted another does not imply physical violence or even wrongdoing on the confronter's part. Indeed, people may and do rightfully confront others. Thus, Defendant's employees' statement that Plaintiff "confronted" Johnson, whether true or false, does not qualify as a defamatory statement since the use of "confront" did not carry with it a connotation of shame and

---

[5] http://www.merriam-webster.com/dictionary/confront.

[6] http://dictionary.reference.com/browse/confront.

14

disgrace, and would not injure Plaintiff's reputation in the community. Simply stating that Plaintiff met face-to-face with Johnson or "present[ed] for acknowledgment [or] contradiction" is not defamatory.

Furthermore, the statement that Plaintiff "confronted" Johnson is true. In fact, Plaintiff admits in his complaint that he knocked the tape recorder from Johnson's hand. The video of the incident then shows that Plaintiff pointed the tape record at Johnson and said something to Johnson while an arm's length away from him. Certainly, Plaintiff's actions meet the definition of "confront." For these reasons, Plaintiff's First Amended Complaint does not state a plausible defamation claim regarding Defendant's employees' reports that Plaintiff "confronted" Johnson.

### C. Statements that Plaintiff Tried to Leave the Courthouse, but was Stopped by Security

Plaintiff also alleges that Defendant's employees defamed him when they stated in a written story and during a newscast that Plaintiff "tried to leave the courthouse, but was stopped by security." (ECF No. 9 at 8-9). Plaintiff asserts that he did not attempt to leave the courthouse; rather, he walked to the entrance of the courthouse to report the incident to court officers stationed there. (*Id.* at 8). Plaintiff denies that he was stopped by a court officer and insists that he initiated contact with the officer. (*Id.*)

Plaintiff's claim on this ground fails for at least two reasons. First, Defendant's employees' assertion that Plaintiff "tried to leave the courthouse, but was stopped by security" is not a defamatory statement. Remarking that a person attempted to leave a courthouse, but was stopped by security, does not sufficiently harm that person's reputation in such a manner that the statement could be considered defamatory. This is especially true when the publisher of the statement assigns no motive for the person

15

attempting to leave the courthouse. There are any number of harmless reasons that a person may try to a leave courthouse and be halted by a court officer. Second, the video of the incident supports the veracity of the statement. Although audio recording of the initial interaction between Plaintiff and the court officer at the entrance to the courthouse is not available, the body language of Plaintiff and the officer suggests that Plaintiff was attempting to leave and the officer directed him to the side near the entryway. If Plaintiff were not trying to leave the courthouse, but rather speak with a court officer to report the incident, it is unclear why Plaintiff would not have returned to the courtroom that he had just exited. Instead, Plaintiff grabbed Johnson's tape recorder from the floor and walked at a brisk pace down the courthouse stairs toward the entrance. In any event, there are certainly enough indicators from the video that Defendant's employees could have reasonably opined that Plaintiff was attempting to leave and was stopped. Accordingly, Plaintiff's First Amended Complaint does not state a plausible defamation claim regarding Defendant's employees' statements that Plaintiff "tried to leave the courthouse, but was stopped by security."

### D. Statements that Plaintiff may be Charged in the Incident

Finally, Plaintiff claims that Defendant's employees' remarks in the print story and during a newscast that Plaintiff "may be charged in the incident" constitute defamation. (ECF No. 9 at 9). Plaintiff asserts that the statements are *per se* defamatory as they insinuate that he committed a crime. (*Id.*) Plaintiff alleges that he was never contacted by law enforcement concerning the incident and he was never charged with any criminal offense related to the incident. (*Id.*)

Plaintiff is correct that an assertion that a person "may be charged with criminal conduct" can fall within the category of statements considered *per se* defamatory at

16

common law. 53 C.J.S. Libel and Slander; Injurious Falsehood § 75 (last updated December 2015). Assuming *arguendo* that any implied criminal charges meet the threshold for moral turpitude, Plaintiff's claim is not plausible because the statements were substantially true. First, Defendant contends that public records demonstrate that a report concerning the incident was filed with the Cabell County Sheriff's Office. (ECF No. 11 at 11). If a report were filed depicting Plaintiff as the aggressor, then one could rationally conclude that a criminal charge against Plaintiff may follow. In fact, Plaintiff admits in his First Amended Complaint that Johnson filed a report with the sheriff's office against Plaintiff. (ECF No. 9 at 4). Second, and most significantly, having watched the video of the incident, the undersigned finds that Plaintiff's conduct may reasonably have been viewed as potentially warranting a criminal charge. Plaintiff admits that he "knock[ed]" the tape recorder out of Johnson's hand, and the video depicts Plaintiff then purposefully stepping on, perhaps trying to squash, the tape recorder. If the tape recorder were destroyed or damaged, then Plaintiff could be charged with misdemeanor destruction of property under West Virginia Code § 61-3-30(a). Furthermore, Plaintiff can also be seen on the video picking up Johnson's tape recorder and carrying it away when it appears that Johnson is requesting that his property be returned to him. Taking and carrying away another's personal property without consent also constitutes a misdemeanor under West Virginia Code § 61-3-30(a). Even if Plaintiff had been struck in the face with Johnson's tape recorder, that did not give Plaintiff the right to intentionally damage the recorder after it had fallen to the floor, snatch it up, and depart with it. In light of Plaintiff's concession that Johnson filed a report against him and given the video recording of the incident, the undersigned finds that Defendant's employees' statements that Plaintiff "may be

17

charged in the incident" were substantially true. Thus, Plaintiff's First Amended Complaint does not state a plausible defamation claim based on these comments.[7]

## V. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, (ECF No. 10), be **GRANTED**; that Plaintiff's First Amended Complaint, (ECF No. 9), be **DISMISSED**; that Defendant's Motion to Dismiss Plaintiff's Complaint, (ECF No. 5), be **DENIED** as moot; and this action be removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis

---

[7] Defendant has also argued that Plaintiff cannot meet the nonprivileged communication element of his defamation claim because the fair report privilege applies. The West Virginia Supreme Court of Appeals has adopted the fair report privilege, which renders privileged "[t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern ... if the report is accurate and complete or a fair abridgement of the occurrence reported." *Hinerman v. Daily Gazette Co.*, 423 S.E.2d 560, 578 (W. Va. 1992) (quoting Restatement (Second) of Torts § 611 (1977)). Here, it is questionable whether the fair report privilege would apply to an incident that occurred after the government proceeding concluded, particularly when the incident involved persons who were not the subject of the government proceeding. However, the undersigned need not resolve the privilege's applicability in this case given that Plaintiff fails to state a plausible defamation claim for the reasons discussed above.

18

of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendant, and counsel of record.

**FILED:** March 30, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge